UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARRIE TIMUS,<br><br>Plaintiff,<br><br>v.<br><br>JULIE A. SU, Acting Secretary of Labor,<br><br>Defendant. | Civil Action No. 23-1646 (JEB) |

**MEMORANDUM OPINION**

A long-time employee of the Department of Labor, Plaintiff Carrie Timus grew disgruntled about her job after a litany of unfortunate events. Dismayed by the continuous misclassification of her position, a supervisor's use of racial epithets, and several unsuccessful attempts to apply for internal-detail positions, she filed a total of six Equal Employment Opportunity complaints between 2013 and 2019, alleging hostile work environment; discrimination on the basis of race, color, sex, disability, and age; and retaliation, all in violation of Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act. After all but the hostile-environment claim concerning the supervisor's use of racial epithets were administratively decided in favor of the Department, she filed suit in December 2022.

Plaintiff's journey to the courthouse, however, has hardly been smooth. As she neglected to timely provide proof of service, this Court dismissed her initial suit without prejudice on June 6, 2023. Timus then refiled the instant action the next day. Asserting that this latest action is (more than) a day late and a dollar short, Defendant now moves to dismiss. Because Plaintiff's claims are indeed time-barred, the Court will grant Labor's Motion without reaching any of the merits questions.

1

I.  **Background**

    A.  <u>Factual Background</u>

The Court, as it must at this juncture, draws the facts from the Complaint.  See <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Because a court can review, at the motion-to-dismiss stage, "documents upon which plaintiff's complaint necessarily relies[,] even if the document is produced . . . by defendant in a motion to dismiss," <u>Ward v. D.C. Dep't of Youth Rehab. Servs.</u>, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted), the Court also considers the Equal Employment Opportunity Commission decisions Labor has appended to its Motion to Dismiss, the authenticity of which is not challenged.

Timus, who is over 40 years old, is a dark-skinned Black woman with vision and mobility impairments who has served in the Department of Labor since 1976.  See ECF No. 1 (Compl.), ¶¶ 1, 23.  Her position of record since 1997 has been a Veterans Correspondence Specialist, GS-11 within the Office of the Assistant Secretary (OAS) in the Veterans Employment and Training Services (VETS).  Id., ¶ 23.

In June 2009, Plaintiff took an extended leave under the Family Medical Leave Act for her daughter's high-risk pregnancy and her own illness.  Id., ¶ 28.  Upon returning, she was unofficially reassigned to the Office of Agency Management and Budget (OAMB), a different component of VETS, even though her official position remained listed under the OAS.  Id., ¶ 32.  During that same period, she was informed by an unidentified VETS colleague that she was "not welcome on the second floor," where the leadership officers were located.  Id., ¶ 34.  The misclassification of Plaintiff's position persisted despite a restructuring within VETS between 2011 and 2013, which included reviewing and revising outdated position descriptions.  Id., ¶¶ 38–39.  Nor did her return to the OAS after taking a second FMLA leave in 2013 spell the end

of her assignment troubles. Upon her homecoming, she was assigned to report to her former supervisor's executive assistant and forced into a secondary role on the controlled-correspondence process, a process she had previously run on her own. Id., ¶¶ 47–48.

The misclassification and the back-and-forth reassignments were not the only things that bothered Plaintiff. While working at the OAMB in an unofficial capacity, she was directly supervised by Rhonda Epps (whose race she has not specified) between December 2011 and October 2012, see id., ¶¶ 36, 40–42, and had to put up with the latter's use of racial slurs and offensive remarks. In June 2012, ahead of a job fair and in reference to the availability of other job opportunities, Epps told Timus and other Black employees that they did not "qualify for anything" and used the N-word to refer to the group. Id., ¶ 45. On another occasion, when Plaintiff inquired about opportunities in the Department, Epps responded that "don't nobody want you; I could not give you away if I wanted to." Id., ¶ 55. The Department eventually launched a harassment investigation into Epps following a complaint filed by another OAMB employee and collected affidavits from VETS employees, including Plaintiff, that revealed Epps's repeated use of racial epithets in the workplace. Id., ¶¶ 51–53. She ultimately served a ten-day suspension as a result. Id., ¶ 54.

Things still did not improve for Timus, who believes that the Department continued to discriminate and retaliate against her. For one, her position remained improperly classified, and she was reassigned again to an unspecified position in 2015. Id., ¶¶ 59, 62. She also had issues with her performance ratings between 2014 and 2016 and alleges that management failed to respond to her comments on one of the appraisals. Id., ¶¶ 58, 61, 63. Additionally, she received a notice of a five-day suspension in 2015, was denied administrative leave and the ability to telework in 2017, was not selected for three internal-detail positions in 2018, and was deemed

ineligible to apply to a department vacancy reserved for GS-13 or higher-level employees in 2019.  Id., ¶¶ 60, 64, 69–70, 73.

### B. Procedural History

No slouch at reporting these incidents, Timus filed no fewer than six EEO complaints between 2013 and 2019, all alleging that she was subject to a hostile work environment and disparate treatment based on her race, color, sex, age, disability, and in reprisal for prior protected activity.  See id., ¶¶ 10–13; see also ECF Nos. 14-1 (First EEOC Decision); 14-2 (First EEOC Decision on Request for Reconsideration); 14-3 (Second EEOC Decision); 14-4 (Second EEOC Decision on Request for Reconsideration); 14-5 (Third EEOC Decision); 14-6 (Third EEOC Decision on Request for Reconsideration); 14-7 (Fourth EEOC Decision); 14-8 (Fourth EEOC Decision on Request for Reconsideration).

Plaintiff filed her first two EEO complaints in September 2013 and September 2014.  See Compl., ¶ 10; First EEOC Decision at 1–2.  After consolidating the two and holding a hearing, an administrative law judge found for Timus on her claim about Epps's use of racially offensive language and awarded her damages, but found no discrimination on the other claims.  See First EEOC Decision at 4.  These findings were subsequently incorporated into the Department's final order and affirmed on appeal by the EEOC.  Id. at 4, 9.  The EEOC then denied Plaintiff's request for reconsideration and issued her a right-to-sue notice on September 29, 2022.  See First EEOC Decision on Request for Reconsideration.

Plaintiff's next two complaints, filed in January 2015 and February 2017, were similarly joined for processing by an ALJ.  See Compl., ¶ 11; Second EEOC Decision at 1–2.  The ALJ concluded that Plaintiff had failed to establish discrimination, a finding adopted by the Department in its final order.  See Second EEOC Decision at 3–4.  The EEOC again affirmed the

4

final order, id. at 5, denied Plaintiff's request for reconsideration, and issued her a right-to-sue notice on September 22, 2022. See Second EEOC Decision on Request for Reconsideration.

The same happened with Timus's September 2018 and July 2019 EEO complaints. See Compl., ¶¶ 12–13; Third EEOC Decision at 1–2; Fourth EEOC Decision at 1–2. In each case, the EEOC found in favor of the Department on all the claims brought, denied Plaintiff's requests for reconsideration, and issued her a right-to-sue notice on November 3, 2022, and September 29, 2022, respectively. See Third EEOC Decision on Request for Reconsideration; Fourth EEOC Decision on Request for Reconsideration.

Having exhausted her administrative remedies, Timus first filed suit in this Court on December 21, 2022. See Timus v. Walsh, No. 22-3784 (D.D.C.) (Timus I), ECF No. 1 (Initial Compl.). On March 27, 2023, this Court entered a Minute Order directing her to file proof of service on Defendant by April 10, 2023, and warning her that the case would otherwise be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). Id., Minute Order of Mar. 27, 2023. As Plaintiff did not comply with Rule 4(i)'s requirements regarding the effecting of service upon a federal defendant, this Court dismissed the case without prejudice on June 6. Id., Minute Order of June 6, 2023. Plaintiff then filed the instant case on June 7. See Compl.

Asserting that this new action was filed more than 90 days from the time when Plaintiff received each of the four right-to-sue notices, Defendant now moves for dismissal of the matter pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.     Legal Standards**

Rule 12(b)(6) permits a court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." Although the pleading rules are "not meant to impose a

great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 533 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In evaluating a defendant's motion to dismiss, a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"A party may raise a statute of limitations argument in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'when the facts that give rise to the defense are clear from the face of the [document].'" Lloyd v. Ingenuity Prep Public Charter School, 368 F. Supp. 3d 25, 26-27 (D.D.C. 2019) (quoting Smith-Haynie v. District of Columbia, 155 F.3d 575 (D.C. Cir. 1998)).

**III.   Analysis**

Federal law requires that a civil action under Title VII, the ADEA, or the Rehabilitation Act must be filed within 90 days of the claimant's receipt of notice of final action by the EEOC. See 42 U.S.C. § 2000e-16(c) (providing 90-day limitation for Title VII claims); 29 U.S.C. § 626(e) (same for ADEA claims); 29 U.S.C. § 749a(a)(1) (incorporating § 2000e-16 for Rehabilitation Act claims). Caselaw in this circuit has consistently called for "strict adherence to

the 90-day requirement." Charles v. Brennan, 174 F. Supp. 3d 97, 102 (D.D.C. 2016) (quoting Gill v. Dist. of Columbia, 872 F. Supp. 2d 30, 35 (D.D.C. 2012)); Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007) ("Courts apply [the 90-day] limit strictly and will dismiss a suit for missing the deadline by even one day.") (cleaned up). The 90-day limitation "functions like a statute of limitations," Wiley v. Johnson, 436 F. Supp. 2d 91, 96 (D.D.C. 2006), and a court may exercise its equitable power to toll the limitation period only in "extraordinary circumstances." Smith v. Dalton, 971 F. Supp. 1, 3 (D.D.C. 1997).

Defendant urges dismissal of the case on the ground that Timus has not timely filed her suit. The Court first looks at that question and then at equitable tolling.

A. The 90-Day Limitation

As Timus received the EEOC final decisions and the four right-to-sue notices on September 22, September 29, and November 3, 2022, her initial suit filed on December 21, 2022 — exactly 90 days after the September 22 notice — was timely. That filing temporarily tolled the 90-day limitation period. See Ciralsky v. CIA, 355 F.3d 661, 672 (D.C. Cir. 2004) ("When a complaint is timely filed, the statute of limitations is tolled[.]"). Unfortunately for Plaintiff, however, that suit was dismissed without prejudice for her service-of-process errors. See Timus I, No. 22-3784 (D.D.C.), Minute Order of June 6, 2023. When such dismissal occurs, "the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." Ciralsky, 355 F.3d at 672 (quoting Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000)). As a result, the 90-day limit on the last of Timus's claims ran out on February 1, 2023, months before she filed this action on June 7, 2023. Dismissal is thus warranted unless Plaintiff can locate an escape hatch.

B.  Equitable Tolling

Urging that dismissal is not warranted, Timus invokes the doctrine of equitable tolling. See ECF No. 17 (Opp.) at 7–8.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. Di Guglielmo, 544 U.S. 408, 418 (2005).  The two prongs must be independently satisfied and the "extraordinary circumstance" showing is met "only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control."  Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 257 (2016).  Neither is satisfied here.

Although Timus initially filed suit in a timely fashion, she has not diligently pursued her rights in this case.  To be sure, "where a claimant has actively pursued [her] rights by filing a defective pleading within the deadline," equitable tolling may sometimes be appropriate. Robinson-Smith v. Gov't Emps. Ins. Co., 424 F. Supp. 2d 117, 122 (D.D.C. 2006); see, e.g., Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 429 (1965) (tolling appropriate where plaintiff failed to file action in federal court because he "[brought] a timely [] action in a state court of competent jurisdiction, [and] . . . serve[d] the defendant with process," only to have his "action . . . later dismissed for improper venue").  Here, however, Plaintiff was promptly informed of her service omissions and given an opportunity by the Court to cure them yet still failed to do so.  Diligence demands more.

Even assuming that Timus can show that she diligently pursued her rights, however, she trips up at the second prong.  Indeed, she does not even contend that extraordinary circumstances exist in her case.  Nor would that argument carry the day if she had.  Cases successfully invoking equitable tolling sometimes involve *pro se* litigants who were misled by the government into

missing a deadline or who barely missed such deadline. See Strong-Fishcer v. Peters, 554 F. Supp. 2d 19, 24–25 (D.D.C. 2008) (citing cases). Courts have otherwise held that equitable tolling may be appropriate where, for instance, a plaintiff was prevented from bringing suit by war. Id. at 25 (citing Robinson-Smith, 424 F. Supp. 2d at 122). None of these circumstances applies to Timus here. She is represented by counsel, was not misled by the Government, and points to no outside hardship.

Timus nonetheless submits that her counsel's failure to effect service by certified or registered mail was not in her control and constitutes excusable neglect that warrants equitable tolling. See Opp. at 7–8. The caselaw does not rank counsel's negligence as an extraordinary circumstance. In Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), for example, where a federal employee had filed an untimely Title VII action because his attorney was absent from his office at the time the EEOC notice was received, the Supreme Court concluded that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." Id. at 96. Just last year, the D.C. Circuit held that a plaintiff and his attorney's decision to mail his Title VII complaint by standard mail four days before the statutory filing deadline, rather than following the options expressly listed on the district court's standing order, "is a 'garden variety claim of excusable neglect' insufficient to warrant equitable tolling." Robinson v. Department of Homeland Security Office of Inspector General, 71 F.4th 51, 59 (D.C. Cir. 2023) (citing Irwin, 498 U.S. at 96).

The neglect of Plaintiff's counsel here is no different. While "an attorney's failure to satisfy professional standards of care may on occasion constitute an 'extraordinary circumstance' warranting equitable tolling," simple mistakes like miscalculating the filing deadline or failing to comply with rules for service of process, without more, do not qualify. Galloway v. Watt, 185 F.

9

Supp. 3d 130, 134 (D.D.C. 2016) (cleaned up); see id. (holding that attorney's failure to file on time, combined with miscalculation of relevant deadline, "suggests simple negligence, not egregious or extraordinary malfeasance") (cleaned up); Holland v. United States, 2012 WL 4442755, at *5 (S.D. Ohio Sept. 25, 2012) (finding that attorney's neglect to effect service and his overlooking of e-mail containing district court's show-cause order did not justify equitable tolling).

Plaintiff cautions that disposing of a case on procedural grounds is disfavored, especially when the dismissal has a preclusive effect. See Opp. at 8. That may be so, but such a general premise cannot outweigh the aforementioned authority concluding that equitable tolling in circumstances like these is unavailable. Plaintiff had a responsibility to ensure proper and timely service on Defendant in accordance with federal rules of service of process. Because she and her attorney did not fulfill that responsibility, even after being given a second chance, the Court will dismiss the case.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 27, 2024